[File No. Cr. 109.]

# IN RE ZIMMER.

(253 N. W. 749.)

Opinion filed February 3, 1934.

*A. Leslie,* State's Attorney of Sargent County, and *C. R. Jorgenson,* for application.

*Romanus J. Downey,* for respondent.

NUESSLE, J.   The relator Alice Triggs is an unmarried woman. She is a resident of the state of South Dakota.   In February, 1933, within the state of South Dakota she was delivered of an illegitimate child.   This child was begotten within the state of South Dakota.   The respondent, Fred Zimmer, is a resident of Ramsey county, North Dakota.   In June, 1933, Alice Triggs being then temporarily in Sargent county, North Dakota, made complaint before a justice of the peace of that county pursuant to the provisions of chapter 5A of the Code

of Criminal Procedure, being §§ 10,500a1–10,500a37, both inclusive, 1925 Supplement to the Compiled Laws of 1913, charging the respondent Zimmer with being the father of her child. Thereupon the justice issued his warrant for the arrest of the said Zimmer pursuant to the terms of § 10,500a11. The sheriff executed this warrant in Ramsey county and took Zimmer into his custody under it. Thereupon Zimmer petitioned the district court of Ramsey county for a writ of habeas corpus. The court issued the writ and he was discharged on the ground that the complainant, Alice Triggs, was not a resident of the state of North Dakota and, therefore, no court within the state had jurisdiction to determine the question of the paternity of her illegitimate child and provide for or require the father of said child to provide for its maintenance and support. . Thereafter the relator applied to this court for an appropriate writ in the exercise of its supervisory power to review the action of the district court of Ramsey county in discharging Zimmer.

On the showing as made by the relator this court issued an order to show cause why a supervisory writ should not issue. On the return day the respondent Zimmer appeared by counsel and moved that the application be dismissed and the order to show cause vacated, the other respondents making no appearance.

The respondent's first contention is that this court has no jurisdiction to review the action of the district court in discharging him on habeas corpus. This contention cannot be sustained. See State ex rel. Bismarck v. District Ct., ante, 399, 253 N. W. 744. Accordingly, it becomes necessary to pass upon the propriety of the district court's action in discharging the respondent. .

The district court held, and the respondent now here contends, that the Illegitimacy Act, chapter 5A of the Code of Criminal Procedure, supra, affords no remedy to the mother of an illegitimate child and her child under circumstances such as are disclosed in this case as against the father of the child who is a resident of the state.

At the common law the father of a bastard child was not legally responsible for its maintenance and support notwithstanding his natural and moral duty to maintain and support it. Many courts, however, have held the bastardy statutes "convert the moral obligation of the father of an illegitimate child to support it into a legal duty enforcible

in the courts." State v. Etter, 24 S. D. 636, 124 N. W. 957, 140 Am. St. Rep. 801; Moore v. State, 47 Kan. 772, 28 P. 1072, 17 L.R.A. 714. And an examination of our Illegitimacy Act, supra, clearly discloses that the legislature in enacting it must have intended such a consequence. The first section of the act speaks unmistakably to this effect. This section provides that "The parents of a child born out of wedlock and not legitimated, owe the child necessary maintenance, education and support. The parents are liable for the child's funeral expenses. The father is also liable for the expense of the mother's pregnancy and confinement. The obligation of the parents to support the child under the laws for the support of poor relatives applies to children born out of wedlock." The act further provides that the mother may recover from the father a reasonable share of the necessary support of the child and that this obligation when judicially established is enforcible as against his estate. If after an action is begun and before judgment is entered the father dies, the action may be prosecuted against the personal representatives of the deceased. Further, the proceeding to compel support may be brought by the mother, or if the child is or is likely to be a public charge, by the parties charged with its support. In case of the mother's disability or death it may be brought by the child through its guardian or next friend. If the proceeding is brought by the mother and she dies or becomes insane, the proceeding does not abate but the child must be substituted as complainant. And where judgment to compel support of a child is recovered in another state it may be sued upon in this state and made a domestic judgment subject to the same remedies as if originally recovered here. The proceeding, though some of the procedure is criminal in form, is, nevertheless, a civil proceeding. See State v. Sukut, 55 N. D. 417, 213 N. W. 961; State v. McKay, 54 N. D. 801, 211 N. W. 435; State v. Vick, 56 N. D. 561, 218 N. W. 214.

Consistent with the theory that the obligation of the father to support his bastard child springs from the paternal relation and the natural and moral duty incident thereto, it is immaterial whether the child was begotten or born within the state or whether the mother and child, or either of them, are residents of the state where the legal obligation is sought to be enforced. See State v. Etter, 24 S. D. 636, 124 N. W. 957, 140 Am. St. Rep. 801, supra; Moore v. State, 47 Kan. 772, 28

P. 1072, 17 L.R.A. 714, supra. But aside from reason and authority, the statute itself is determinative on this question. Section 10,500a32 expressly says that "Jurisdiction over proceedings to compel support is vested in the district court of the county in which the alleged father is permanently or temporarily resident, *or in which the mother of the child resides or is found. It is not a bar to the jurisdiction of the court of the county where the complaining mother or child resides in another state. . . .*" It seems to us too plain for argument that residence within the state is not essential in order to enable the mother of an illegitimate child to compel the child's father to contribute to its maintenance and support, and that the action to do so may be brought either in the county in which the father is resident or in any county where the mother may be.

It follows that the district court erred in discharging the respondent.

BURKE, CHRISTIANSON and BURR, JJ., concur.

MOELLRING, J., did not participate.