## STATE v. ROBERT RUDOLPH.[1]

June 10, 1938.

No. 31,689.

*C. U. Landrum,* for appellant.
*H. N. Jenson,* County Attorney, for the State.

HOLT, JUSTICE.

Defendant appeals from the order denying his motion for a new trial. A complaint sworn to by Jewell H. Boe was filed in the municipal court of Detroit Lakes, Becker county, this state, charging defendant with being the father of her illegitimate child, born June 20, 1936, in Great Falls, Montana, which child at the time of filing the complaint was in the county of Becker, and that said Robert Rudolph resided in Ramsey county, this state. The proceeding came to trial before the district court of Becker county,

[1]Reported in 280 N. W. 1.

and resulted in a verdict that defendant was the "father of the male child born to Jewell H. Boe on June 20, 1936."

The assignments of error are confined to a challenge of the jurisdiction of the court, in that the proceeding was not tried in the proper county. This was raised by objection to the reception of any evidence, by motion to dismiss at the close of the testimony, and by requests to charge. There is no claim that the verdict finding defendant the father of the child is not sufficiently supported by the evidence.

Defendant concedes that in this state the law is settled that a filiation proceeding is, in substance, a civil action or proceeding governed in the main by the rules of practice in civil cases. 1 Dunnell, Minn. Dig. (2 ed.) § 827; State v. Jeffrey, 188 Minn. 476, 247 N. W. 692. A late case is State v. Riegel, 194 Minn. 308, 260 N. W. 293, where the state moved for and obtained a new trial after the jury returned a verdict of not guilty—a thing the state cannot do in a criminal case. In 1917, in State ex rel. Simon v. District Court, 138 Minn. 77, 163 N. W. 797, this court decided that as the law then stood a defendant in a bastardy case could not obtain a change of venue to the county of his residence, but that it was for trial in the county of the mother's residence. No doubt that decision caused the legislature of 1921 to amend c. 17 of 1 Mason Minn. St. 1927, relating to illegitimate children, by adding this provision to § 3261 thereof: "Such complaint shall be filed and further proceeding had either in the county where the woman resides or in the county where the alleged father of the child resides or in the county where the child is found, if it is likely to become a public charge upon such county." Essentially the same provision was added to § 3269, which permits others than the mother to file a filiation complaint. Neither section as amended deprives any justice of the peace or municipal court of authority to receive a complaint charging a defendant with being the father of an illegitimate child, but directs the court to which defendant is to be bound over and further proceedings had. There can hardly be any question of the right of a defendant under the amendment of 1921 to move for a change of venue before trial;

and if a defendant, in a transitory civil action or proceeding, fails to move for a change of venue before trial, he is concluded from raising the question that the trial court is without jurisdiction to proceed in that the cause is not brought in the right county. By not making the proper motion for a change of venue defendant was precluded from raising the objection at the trial. 6 Dunnell, Minn. Dig. (2 ed.) §§ 10116, 10117, and 10118. In 7 Am. Jur. p. 685, § 87, it is stated that the rules applied in civil actions to a change of venue, when such actions are begun in a county deemed improper by defendants, should obtain in bastardy proceedings.

We also think the record shows conclusively that the district court of Becker county had jurisdiction over both defendant and the subject matter. Defendant was bound over to that court and the complaint filed therein. For failure to secure a change of venue before trial, defendant's objection to the introduction of any evidence on the ground of lack of jurisdiction of the court was properly overruled. In In re Bolman, 131 Kan. 593, 292 P. 790, it was claimed that the judgment in a bastardy proceeding was null and void because the trial was not in the proper county. There, as here, the complaint could be filed with any justice of the peace in the state. The claim was not sustained—the ruling being in accordance with its prior decision of Moore v. State, 47 Kan. 772, 28 P. 1072, 17 L. R. A. 714, where it was held: "If the putative father of a bastard child is a resident of this state, the mother can institute proceedings against him under our statute, even if the mother and child are residents of another state." To like effect is In re Zimmer, 64 N. D. 410, 253 N. W. 749, where after judgment of filiation the defendant was released on *habeas corpus* by the district court on the ground that the court rendering the judgment was without jurisdiction because the mother filed the complaint in a county other than that of defendant's residence, she having filed it in the county where she happened to be, she being a resident of another state. The supreme court reversed the order in the *habeas corpus* proceeding. On the same principle the decision in the filiation proceeding of State ex rel. Patterson v. Pickering, 29 S. D. 207, 213,

136 N. W. 105, 40 L.R.A.(N.S.) 144, is based, the court saying: "In fixing the place for trial, it makes no difference where the cause of action arose, where the child was born, or where the mother or child may be domiciled at time action is brought," citing State v. Etter, 24 S. D. 636, 124 N. W. 957, 140 A. S. R. 801. The court properly overruled the objection to the reception of the evidence.

The other assignments of error rest upon the refusal of the court to instruct the jury that it was incumbent on the state to show by a fair preponderance of the evidence that the child involved was likely to become a charge upon the county of Becker, and that if the state had failed so to show by a fair preponderance of the evidence the verdict should be not guilty. In that connection error is also predicated upon the refusal to give requested instruction regarding the settlement of the mother under the poor relief statute. We do not think the court erred in refusing to give either request. There was no dispute as to the fact that the child was begotten and born in Montana; that its mother, the complainant, was born and raised in Becker county, that she was on a visit there when the complaint was filed in the municipal court of Detroit Lakes, said county, and that previous thereto she had brought the child to that county and arranged with a person there to keep and care for the child for a consideration, and that ever since such arrangement the child had remained in said county up to the trial. The fact that complainant, after filing the complaint, went or returned to St. Paul, where she worked, is of no importance, and has no bearing upon the issue of whether or not defendant is the father of the child. A child left in Becker county under the situation here presented is, as a matter of law, likely to become a charge upon the county. If anything happened to its mother so that the payments she has agreed to make for its care and keeping are not made, the county where the child is found is almost certain to be charged with its keep. But, aside from that, the mother could file the complaint in any justice or municipal court in the state, and the district court of the county to which such justice or municipal court bound defendant over had jurisdiction to determine defendant's

paternity, unless defendant timely secured a change of venue. We think the trial court properly refused to give the requested instruction concerning settlement under the poor relief statutes.

The order is affirmed.