In the Interest of Bonita KLEIN.

Civ. No. 10187.

Supreme Court of North Dakota.

Oct. 20, 1982.

Beyer & Holm, Dickinson, for appellant Bonita Klein; argued by John O. Holm, Dickinson.

Owen K. Mehrer, State's Atty., Dickinson, for appellee State of N.D.

ERICKSTAD, Chief Justice.

Plaintiff/appellant, Bonita Klein, is appealing from an order entered by the District Court of Stark County denying her application for writ of habeas corpus. The crucial issue to be determined is whether or not the order denying Bonita Klein's application is appealable. For the reasons hereinafter stated, we dismiss her appeal.

On March 8, 1982, the Stark County Court with Increased Jurisdiction ordered that Bonita be involuntarily committed on the basis that she was severely mentally ill. § 25–03.1–02(11)(a), N.D.C.C. On March 9, 1982, Bonita filed an application for a writ of habeas corpus in the District Court of Stark County. The district court held a hearing on March 12, 1982. After reviewing the record of the county court, the district court found that Bonita's commitment was justified under Section 25–03.1–02(11)(b)(3), N.D.C.C. Therefore, the district court denied the writ. On appeal, counsel for Bonita is challenging the constitutionality of Section 25–03.1–02(11)(a), N.D.C.C.[1]

In *Carruth v. Taylor,* 8 N.D. 166, 77 N.W. 617, 621 (1898), we held that ". . . an order denying a writ of habeas corpus is not appealable." See, also, *J.L.R. v. Kidder County Social Service Board,* 295 N.W.2d 401, 404 (N.D.1980); *Havener v. Glaser,* 251 N.W.2d 753, 757 (N.D.1977); *LePera v. Snider,* 240 N.W.2d 862, 867 (N.D.1976); *In re Zimmer,* 64 N.D. 410, 253 N.W. 749, 750 (1934); *State ex rel. City of Bismarck v. District Court in and for Burleigh County,* 64 N.D. 399, 253 N.W. 744, 745 (1934); *Ex parte Simonson,* 54 N.D. 164, 209 N.W. 211 (1926). However, Bonita's counsel argues that Section 25–03.1–40(11), N.D.C.C., grants an individual the right of habeas corpus when confined to a treatment facility; therefore, Bonita was entitled to appeal the district court's order denying her writ of habeas corpus. Notwithstanding subsection (11), we conclude that the proper method of securing a writ of habeas corpus from this court would have been to file an original application with our court.

We could choose to review the district court's denial of the writ of habeas corpus by exercising our constitutional power of superintending control. *Havener v. Glaser,* 251 N.W.2d 753, 757 (N.D.1977); *Green v. Wiese,* 78 N.W.2d 776, 780 (N.D. 1956); *State ex rel. Johnson v. Broderick,* 75 N.D. 340, 27 N.W.2d 849, 859 (1947); *In re Zimmer,* 64 N.D. 410, 253 N.W. 749, 750 (1934); *State ex rel. City of Bismarck v. District Court in and for Burleigh County,* 64 N.D. 399, 253 N.W. 744, 745 (1934).

1. Section 25–03.1–02(11)(a), N.D.C.C., reads as follows:

"11. 'Person requiring treatment' means either a person:

a. Who is severely mentally ill; . . ."

However, in the case at bar, we decline to review the district court's denial of Bonita's application because Bonita is no longer involuntarily confined and to our knowledge there have been no attempts to further confine her by the filing of a new petition for involuntary hospitalization.

In addition to the aforementioned reasons, if involuntarily committed in the future, Bonita would have a right to an expedited appeal. Under Section 25–03.1–29, N.D.C.C.,[2] Bonita would have the right to appeal an order of involuntary commitment to the district court where a hearing would be held within 14 days after filing of the notice of appeal. In 1981, the North Dakota Legislature amended Section 25–03.1–29, N.D.C.C., so that as of January 1, 1983, the appeal would be directly to the Supreme Court.[3]

Assuming arguendo that Bonita had properly filed an application for an original writ of habeas corpus with this court under Article VI, Section 2 of the North Dakota Constitution and Section 32–22–06, N.D.C.C., we would have denied her application on the merits. Bonita's counsel alleges that committing her under the authority of Section 25–03.1–02(11)(a), N.D.C.C., violates her constitutional right of due process because the phrase "severely mentally ill" is void for vagueness. She relies on *O'Connor v. Donaldson,* 422 U.S. 563, 95 S.Ct. 2486, 45 L.Ed.2d 396 (1975). A necessary predicate to adjudicating the posed constitutional issue is to determine whether or not Bonita should have been involuntarily committed under Section 25–03.1–02(11)(a). Upon examining the record, we conclude that Bonita was committable under Section 25–03.1–02(11)(b)(3), N.D.C.C.[4] In making this determination, we regard as significant the testimony of Dr. Sherman Severson, a psychiatrist. The pertinent parts of Severson's testimony follow:

"Q What caused this latest hospitalization?

\* \* \* \* \* \*

"A ... She seemed to get very angry for no reason. And just did not seem to be well ... and capable of taking care of herself.

\* \* \* \* \* \*

"Q What can you point to specifically, that indicates that she does have any problems?

\* \* \* \* \* \*

"A ...

But it's my concern that she's not going to be able to take care of herself if she were to be discharged.

\* \* \* \* \* \*

2. Section 25-03.1-29, N.D.C.C., reads in pertinent part:
"The respondent shall have the right to an expedited appeal from an order of involuntary commitment or alternative treatment, a continuing treatment order, an order denying a petition for discharge, or an order of transfer. Upon entry of an appealable order, the court shall notify the respondent of the right of appeal and the right to counsel. The notice of appeal must be filed within thirty days after the order has been entered. Such appeal shall be to the district court and the hearing shall be commenced within fourteen days of filing of the notice of appeal...."

3. The relevant portion of Section 25–03.1–29, N.D.C.C., as amended, states the following:
"The respondent shall have the right to an expedited appeal from an order of involuntary commitment or alternative treatment, a continuing treatment order, an order denying a petition for discharge, or an order of transfer. Upon entry of an appealable order, the court shall notify the respondent of the right of appeal and the right to counsel. The notice of appeal must be filed within thirty days after the order has been entered. Such appeal shall be to the supreme court and the hearing shall be commenced within fourteen days of filing of the notice of appeal...."

4. Section 25–03.1–02(11)(b)(3), N.D.C.C., reads as follows:
"11. 'Person requiring treatment' means either a person:
b. Who is mentally ill, an alcoholic, or drug addict, and there is a reasonable expectation that if the person is not hospitalized there exists a serious risk of harm to himself, others or property. 'Serious risk of harm' means a substantial likelihood of:

\* \* \* \* \* \*

(3) Substantial deterioration in physical health, or substantial injury, disease, or death resulting from poor self-control or judgment in providing one's shelter, nutrition, or personal care."

"Q The petition indicates that she can reasonably be expected within the near future to intentionally or unintentionally seriously physically harm herself or another person. And has engaged in an act or acts and made significant threats that are supportive of this expectation and therefore requires treatment.

"Are you aware of anything that specifically relates to those areas?

"A Yes, I'm—I basically felt that she wouldn't be able to take care of herself because of neglect. That she isn't going to be able to take care of her basic needs. And therefore she's going to be injuring herself.

\* \* \* \* \* \*

"A ... Where as previously she has lived in her own apartment or her own house and managed a job and managed to take care of herself quite well.

"She is not able to do that at this point. So I believe there has been a deterioration in her functioning.

\* \* \* \* \* \*

"Q If she—is she of an imminent—is she putting herself in imminent danger of seriously or substantially injuring herself?

"A Again we don't see evidence for that. You know, I can't say just how she might do that in the near future. I'm saying that it will eventually be that way by neglect because she is not using good judgment about herself.

\* \* \* \* \* \*

"Q ... Would taking medication today solve her problems for today....

\* \* \* \* \* \*

"A I believe that it's—that it's necessary for her to function normally to take the medication. With the medication she has a chance to get along and function normally and indefinitely.

"Without the medication she is going to have periodic break-downs and not be able to function.

\* \* \* \* \* \*

"Q You feel that she would be basically unable to attend to her basic physical needs?

"A Yes."

Thus, an adjudication of the constitutionality of Section 25–03.1–02(11)(a), N.D.C.C., would be tantamount to rendering an impermissible advisory opinion. *In re Novak's Estate,* 73 N.D. 41, 11 N.W.2d 64 (1943).

A de novo review of the record is proper in this instance because Bonita's counsel alleges that she was restrained in violation of her constitutional rights. *Application of Stone,* 171 N.W.2d 119, 121 (N.D.1969); *Fournier v. Roed,* 161 N.W.2d 458, 460 (N.D.1968). In reviewing this case, we have not applied the clearly erroneous test of Rule 52(a), N.D.R.Civ.P., because we have considered it, for purposes of discussion, as though original jurisdiction had been sought and the case were tried anew. This distinguishes this case from *Mansukhani v. Pailing,* 318 N.W.2d 748, 751 (N.D. 1982) and *Mansukhani v. Pailing,* 300 N.W.2d 847 (N.D.1980), *cert. denied,* 454 U.S. 818, 102 S.Ct. 98, 70 L.Ed.2d 88 (1981).

We therefore dismiss Bonita's appeal from a denial of her application for writ of habeas corpus.

SAND, VANDE WALLE, PEDERSON and PAULSON, JJ., concur.